IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VIBRON L. LLOYD,<br><br>        Plaintiff,<br><br>  v.<br><br>THOMAS J. DART, Sheriff of Cook County,<br><br>        Defendant. | No. 14 C 69<br><br>Judge Virginia M. Kendall |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Vibron Lloyd was incarcerated in Division 3 of Cook County Jail for five days from March 13 to March 18, 2013. He filed this Complaint on January 3, 2014, alleging violations of his civil rights under 42 U.S.C. § 1983 due to the conditions of Division 3. (Dkt. No. 1.) This is one of over 600 cases that were filed in an approximate 18-month period by pretrial detainees against the Sheriff for alleged constitutional violations stemming from their stay in Division 3 of the jail. There was a mistaken belief by many of the detainees that the Division, being one of the oldest in the jail, was actually condemned and that they were not permitted to be housed there. This Court agreed to consolidate these cases for resolution. Any case within which the defense presented the affirmative defense of exhaustion required a *Pavey* hearing and this Court recruited counsel to conduct all *Pavey* hearings. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). The Court recruited counsel in this matter and recruited counsel engaged in discovery on the issue of exhaustion and conducted a *Pavey* hearing.

Under the Prison Litigation Reform Act ("PLRA"), Lloyd as a prisoner may not initiate a suit concerning his confinement conditions under federal law prior to exhausting "such

administrative remedies as are available" within the Jail. *See* 42 U.S.C. § 1997e(a). At the hearing, Defendant Dart argued that Lloyd failed to exhaust the administrative remedies available to him because according to its records, Lloyd only filed one grievance in November of 2013 regarding the conditions of his confinement in Division 3 that was denied as untimely. Lloyd testified at the hearing and claimed that he exhausted his administrative remedies because he filed an earlier grievance while assigned to Division 3.[1] Based on the evidence presented at the *Pavey* hearing, the Court finds that the Defendant carried its burden to show that Lloyd failed to exhaust the available administrative remedies.

## BACKGROUND

Lloyd entered Cook County Jail on March 13, 2013 and was immediately housed in Division 3. (Tr. 10:12-13.) He remained in Division 3 for five days until March 18, 2013 when he was moved to Division 11. (Tr. 31:21-22.) In the Complaint, Lloyd complains that while he was in Division 3, the toilets flooded, the sink was inoperable, the temperature was cold, there were mice, the shower water was cold, and the living areas were filthy. (Dkt. No. 1 at 9-10.) He alleges that he suffereda fungal infection in his foot, fever, and respiratory infection as a result of these conditions. *Id.*

The Cook County Department of Corrections ("CCDOC") has an established grievance procedure for inmates governed by Sheriff's Order 11.14.5.0 ("Detainee Grievance Procedure"), which is not provided to inmates. (Dkt. No. 47 at ¶3.) The Detainee Grievance Procedure requires an inmate to properly file a grievance 15 days from the alleged grievable offense and appeal the grievance response within 14 days from receipt of the grievance response. *Id.* at ¶5. If an inmate submits a complaint more than 15 days after the grievable offense, under the

---

[1] Citations to the hearing transcript are noted as "Tr.__:__."

Detainee Grievance Procedure it is marked as a non-grievance request, notated as untimely, and returned to the inmate. *Id.* at ¶37.

While Lloyd was an inmate in the Jail, Correctional Rehabilitation Workers ("CRWs") made daily rounds of the jail to explain the grievance process to inmates and collect grievances. *Id.* at ¶6. Inmates could submit grievances on carbon-copy Inmate Grievance forms or on loose-leaf paper if no forms are available. *Id.* at ¶7. When the CRW received a grievance, she signed and dated it and gave a carbon copy to the inmate. *Id.* An inmate's complaint was processed as either a grievance or a non-grievance request. *Id.* at ¶8. When a CRW processed a complaint as a grievance, the CRW brought it to the inmate services designated office where it is reviewed and assigned a grievance tracking number. *Id.* at ¶9. The grievance tracking number, inmate's name, and inmate ID number were recorded in the CCDOC Master Grievance Log Book or Grievance Database. *Id.* at ¶10. Non-grievance requests were not assigned tracking numbers, but it was the Jail's policy to maintain hard copies of all grievances and non-grievance requests in the ordinary course of business. *Id.* at ¶¶11-12. Non-grievance requests were stored by inmate name and inmate ID number. *Id.* at ¶31. From March 14 to 18, 2013, the CCDOC grievance procedure was not posted in Division 3 and there was no collection box for grievances or non-grievances in Division 3. *Id.* at ¶¶13-14. Jail policy required the distribution of the CCDOC Inmate Information Handbook during intake and the Handbook was also available in the Jail libraries. *Id.* at ¶16.

From March 14 to 18, 2103, Lester Hampton, Jr. was the CRW assigned to collect grievance and non-grievance requests from the inmates in Division 3. *Id.* at ¶18. Hampton entered the grievance and non-grievance requests that he received during this time period into a log. (Dkt. No. 47 at Ex. 9.) Logs maintained during this time did not track individual inmate

3

requests. (Dkt. No. 47 at ¶34.) The Defendant is able to locate all grievances and non-grievance requests entered in Hampton's log, except for a non-grievance request logged by Hampton on March 15, 2013. *Id.* at ¶¶19-25. Defendant also did not locate any grievances or non-grievance requests submitted by Division 3 inmates from March 16 to 18, 2013. *Id.* at ¶27. In his 2013 log book, Hampton entered two grievances from separate inmates and gave them the same grievance control number. *Id.* at ¶24.

Lloyd claims to have filed a grievance form about Division 3 conditions on March 14 or 15, 2013. (Tr. 15:19-22.) He alleges that the Defendant never responded to his grievance and that the entire grievance form was taken from him when he submitted it so that he received no carbon copy. (Tr. 21:1-13.) The Defendant performed a review of the CCDOC grievance records by searching Lloyd's name and detainee ID number for all grievance and non-grievance requests made before February 28, 2015. *Id.* at ¶17. The Defendant recovered 13 requests, but did not recover any grievance or non-grievance request from Lloyd submitted while he was housed in Division 3. (Dkt. No. 47 at Ex. 4.) On November 8, 2013, Lloyd submitted a grievance request complaining about the living conditions in Division 3. (Dkt. No. 47 at ¶35.) Specifically, Lloyd protested the cold temperature and showers. (Dkt. No. 47 at Ex. 5.) On November 12, 2013, Defendant provided Lloyd a response to his grievance request. (Dkt. No. 47 at Ex. 6.) It denied Lloyd's complaint because Lloyd did not file it within 15 days of the grievable event. *Id.* Defendant received a complaint from Lloyd about Division 3 conditions on December 11, 2013, that consisted of an envelope post-marked November 18, 2013, a letter from Lloyd dated November 14, 2013, a grievance form completed by Lloyd dated November 14, 2013, the previously submitted non-grievance request, and the Defendant's response to that request. (Dkt. No. 47 at Ex.7.) In the letter, Lloyd stated that he is "writing in order to fully

exhaust my administrative remedies[.]" *Id.* On December 11, 2013, Defendant provided Lloyd a grievance response form explaining that his complaint was non-grievable as it was not filed within 15 days of the event. *Id.* at Ex. 8.

## LEGAL STANDARD

"Prisoners must properly exhaust all available administrative remedies before pursing claims, including § 1983 actions, in federal court." *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) (citing 42 U.S.C. § 1997e(a)). Moreover, the prisoner must exhaust his grievances according to prison procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 84, 88 (2006). Prisoners must strictly comply with the exhaustion requirement. *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). While exhaustion requirements are strict, failure to exhaust is an affirmative defense and the Defendant maintains the burden of proof of showing that Lloyd failed to exhaust here. *See Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005). To be available as an administrative remedy, the remedy must "be available in fact and not merely in form." *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013). Courts analyze a prisoner's exhaustion under the preponderance of the evidence standard. *See, e.g.*, *Pierce v. Earl*, No. 12 CV 5725, 2015 WL 3664198, at *3 (N.D. Ill. June 11, 2015); *Wieczorek v. Slivia*, No. 12 CV 4904, 2015 WL 73810, at *3 (N.D. Ill. Jan. 5, 2015); *Hicks v. Irvin*, No. 06 CV 645, 2011 WL 2213721, at *7 (N.D. Ill. June 7, 2011).

## DISCUSSION

The parties dispute two issues at the exhaustion phase: first, whether the grievance process was available to Lloyd in March 2013 when he resided in Division 3; and second, whether Lloyd filed a grievance request during those five days. Lloyd asserts that he submitted a grievance request about the Division 3 conditions on March 14 or 15 of 2013 while he was

5

incarcerated there. (Tr. 40:14-19.) He claims that the Defendant never responded to his grievance request and therefore he exhausted his administrative remedies because he properly followed the Defendant's grievance procedures. *Id.* Lloyd argues that the Court cannot find that he failed to exhaust simply because the Defendant has no record of the March grievance request because Defendant regularly mislabels, misfiles, destroys, and loses grievance requests. (Tr. 41:1-3.) Lloyd further argues that there were no administrative remedies available to him because he was not familiar with the grievance process while he was in Division 3 and his complaint could not have been remedied when he was moved to Division 11 where he learned about the grievance process. (Tr. 50:1-5.)

In response, Defendant posits that the evidence does not support a finding that Lloyd filed a grievance request in March 2013. (Tr. 57:1-19.) The only evidence that exists of a grievance filed by Lloyd is the November 8, 2013 grievance when he complained about Division 3 conditions. That grievance was dismissed as untimely. Defendant argues that the Court should find that Lloyd failed to exhaust his administrative remedies because under the law the Defendant can hold inmates to strict compliance with its grievance procedure. (Tr. 54:1-19.) As support, the Defendant points to language Lloyd used in his November 2013 grievance request, which the Defendant believes belies Lloyd's claim that he filed one in March 2013. (Tr. 57:12-19.) The Defendant proposes that Lloyd could have still filed a grievance request after he left Division 3 in order to remedy its conditions because Lloyd had no reason to believe that he would not return to Division 3 and be subjected to its conditions again. (Tr. 56:2-8.) Lastly, the Defendant argues that the grievance procedure was available to Lloyd when he was housed in Division 3 because it is provided in the Jail libraries, which Lloyd says he visited, it was

6

explained on the grievance form itself, which Lloyd has completed several times, and the Jail gave it to him at intake. (Tr. 60:6-18.)

### A. The Grievance Procedure was Available to Lloyd

Under the PLRA, an inmate must exhaust his administrative remedies by following the procedural rules for grievances where he is incarcerated. *See Woodford*, 548 U.S. at 90. "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004) (inmate must "take all steps prescribed by the prison's grievance system"). Although an inmate must follow the grievance procedures proscribed by the jail, the inmate is only required to utilize those steps to the extent they are available. *See Woodford*, 548 U.S. at 102; *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). The "availability" of a remedy is a matter of what is realistically accessible for a prisoner to pursue. *See Kaba*, 458 F.3d at 684. When a jail fails to inform inmates of the grievance procedure or grievance rules are applied haphazardly, inmates cannot be expected to follow the established procedures. *See King*, 781 F.3d at 896 ("Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about."); *Ajala v. Tom*, 592 F. App'x 526, 528 (7th Cir. 2015) (where prison officials thwart inmates from exhausting, "the process that exists on paper becomes unavailable in reality").

The Jail policy is to provide inmates the CCDOC Inmate Information Handbook at intake. (Dkt. No. 47 at ¶16.) The Handbook is also available in the Jail libraries. *Id.* Chapter 7 of the Handbook gives detailed instructions for how to file a grievance request and explains that inmates must "fill out an Inmate Grievance Form within fifteen (15) days of the occurrence of the incident, problem, or event that you are grieving…The forms are available on your living

unit or by your CRW during their rounds." (Dkt. No. 47 at Ex. 2.) Hampton, the CRW assigned to Division 3 while Lloyd was housed there, collected several non-grievance and grievance requests during those five days, proving that there was a CRW available to process a grievance or non-grievance request by Lloyd and that pretrial detainees took advantage of that process. (Dkt. No. 47 at Ex. 9.) According to the Defendant's search of all grievance and non-grievance requests under Lloyd's name and inmate ID, Lloyd filed his first grievance request on August 22, 2013. (Dkt. No. 47 at Ex. 4.) This form, like all 13 grievance and non-grievance requests completed and signed by Lloyd, contains a paragraph that describes the grievance process. *Id.* In particular, it reads: "An inmate wishing to file a grievance is required to do so within 15 days of the event he/she is grieving." *Id.* Lloyd testified that he has been incarcerated in the Jail "seven or eight" times *prior* to arriving in March 2013, including "probably twice" in the last ten years, which increases the likelihood that Lloyd was familiar with the grievance process. (Tr. 33:8-17.) Lloyd claims that he was not informed of the grievance process until he arrived in Division 11 in March 2013. (Tr. 34:17-22.) But he did not file a grievance until August 22, 2013, and that first grievance complained about the body scans used by the Jail at intake, not Division 3 conditions. (Dkt. No. 47 at Ex. 4.) In fact, Lloyd did not file a grievance request about Division 3 conditions until November 8, 2013, eight months after Lloyd says he was made aware of the ability to file a grievance or non-grievance request. (Dkt. No. 47 at Ex. 5.) In short, the undisputed evidence of the grievance requests filed by Lloyd call into question his testimony that he was not aware of the grievance process until he arrived at Division 11. Overall, the evidence supports that Defendant made the grievance process available to Lloyd and there is no evidence that the Defendant "concealed" the process from him. *Compare, e.g., Hurst v. Hantke*, 634 F.3d 409, 411 (7th Cir. 2011) ("[A] remedy is not available if essential elements of the

procedure for obtaining it are concealed."). As a result, the Jail fulfilled its obligation to make the grievance process available to Lloyd and filing a grievance was "realistically accessible" to Lloyd from March 13 to 18, 2013 while he was in Division 3. *Kaba*, 458 F.3d at 684; *compare with Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) (remedy not available where grievance form was not provided to inmates); *Hemphill v. New York*, 380 F.3d 680, 688 (7th Cir. 2004) (remedy not available where inmate was threatened with violence for attempting to take advantage of administrative process).

In addition, Lloyd argues that there were no administrative remedies available to him for the Division 3 conditions once he was moved to Division 11. But the fact that Lloyd was moved to Division 11 does not change the availability of administrative remedies during the five days he spent in Division 3. Because the Court has concluded that the Defendant told Lloyd about the grievance process while he was in Division 3, it is irrelevant that Lloyd was moved to Division 11. *See King*, 781 F.3d at 896 ("Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about."); *see, e.g., Pierce*, 2015 WL 3664198 at *3 (holding that plaintiff did not exhaust administrative remedies because "Plaintiff was not 'kept in the dark' about the necessary procedure, and the procedure did not change after his lawsuit was filed. The evidence shows that, while Plaintiff may not have been aware of the precise procedure for filing a grievance, he was informed of what was required.").

### B. The Defendant Proved by a Preponderance of the Evidence that Lloyd Did Not Submit a Grievance Request in March 2013

Lloyd contends that he exhausted his administrative remedies because he submitted a grievance request on March 14 or 15, 2013 and never received a response from the Defendant. (Tr. 40:14-19.) The Defendant's grievance process—as outlined in the Handbook and on all grievance and non-grievance request forms—demands that inmates file a request within 15 days of the grievable event. (Dkt. No. 47 at ¶5.) The law dictates that Lloyd must strictly comply with the deadlines established in the Defendant's grievance process in order to exhaust his administrative remedies. *See Woodford*, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). "[W]hen the prisoner causes the unavailability of the grievance process by simply not filing a grievance in a timely manner, the process is not unavailable but rather forfeited." *Kaba*, 458 F.3d at 684; *see also Pozo*, 286 F.3d at 1025 ("there is no doubt about the right treatment when the one and only ground for rejecting a claim or appeal is untimeliness."). Therefore, for the Court to conclude that Lloyd did not exhaust his administrative remedies, the Defendant must prove by a preponderance of the evidence that Lloyd did not submit a grievance or non-grievance request within 15 days of leaving Division 3 in compliance with the Defendant's grievance procedure.

The only evidence supporting that Lloyd filed a grievance in March is his testimony and his allegation that Defendants must have lost the grievance. The Court finds the Defendant satisfied its burden of proving by a preponderance of the evidence that Lloyd did not submit the request. The question boils down to a credibility determination of whether Lloyd submitted the

request as he claims, which the Court is entitled to make using the evidence presented at the *Pavey* hearing. *See Towns v. Holton*, 346 F.App'x 97, 100 (7th Cir. Sept. 22, 2009) (remanding to district court to make credibility determinations rather than accept defendants' argument that plaintiff did not exhaust).

Lloyd testified that he tendered a grievance request on March 14 or 15, 2013, and points to holes in the Defendant's process for recording grievance and non-grievance requests to explain why the Defendant has no record of it. (Tr. 41:1-3.) The Court does not find Lloyd's testimony credible for a number of reasons: 1) it not credible that he was not made aware of the grievance procedures when he had been housed in Cook County Jail at least eight times prior to this period; 2) it is not credible that his grievance was the only one missing from the day that other inmates had access to the procedure, used the procedure, and defendants responded to those other inmates; 3) it is not credible that he did not act for 8 months while he waited for a response when he did not wait that long to challenge his other denial of grievances from Defendants; and 4) Plaintiff has a motivation to fabricate that he filed in a timely fashion in order to be included in the large number of cases of other plaintiffs who have complained of the same conditions.

First, Lloyd grieved about the conditions of Division 3 in a grievance request he filed on November 8, 2013, eight months after he left Division 3. (Dkt. No. 47 at Ex. 5.) The length of time that elapsed between Lloyd's alleged March grievance request and the one he filed in November casts doubt on the existence of the former. It is unlikely that Lloyd would wait eight months to follow up on his March request especially in light of the fact that he had been a pretrial detainee a number of times in the past and would have had exposure to the grievance procedure with each pretrial detention period. Second, prior to filing the November grievance request, Lloyd filed three requests complaining about other issues and received responses from

11

the Defendant within two weeks of filing each request. (Dkt. No. 47 at Ex. 4.) Lloyd received the first response to a grievance request from the Defendant on August 27, 2013, five days after he filed the request. *Id.* Lloyd received the Defendant's response to his second request on September 24, 2013, eleven days after it was filed, and on September 26, 2013 he received the Defendant's response to his third request that was filed ten days prior. *Id.* The Defendant's timely responses to Lloyd's later grievance requests reasonably communicated to Lloyd that he should have received a response from the Defendant to his alleged March grievance request. This casts doubt on Lloyd's claim that he filed a March grievance request and then waited until November to follow up on it when he knew by August 27, 2013 that it was the Defendant's practice to respond promptly. Third, Lloyd's November grievance request about the conditions of Division 3 makes no reference to a prior grievance on the same subject, which casts further doubt on Lloyd's testimony. Rather, its states "I would like to file a formal complaint for what I was subjected to when housed in Div. 3 when I first was processed in Cook Co. Jail," and goes on to described the inadequate conditions. *Id.* Fourth, the Defendant has no record of a March 2013 grievance filed by Lloyd about Division 3 conditions. (Dkt. No. 47 at Ex. 4.) Although the lack of a jail records alone is not sufficient to establish that the grievance request was never filed, the Defendant presented additional evidence to buttress this proposition. *See e.g., Hicks,* 2011 WL 2213721 at *7 (holding that defendant did not prove that plaintiff failed to exhausted administrative remedies where defendant argued that no grievance was filed because it had no record of it). Specifically, evidence of the long delay after Lloyd filed his first grievance request and when he submitted the November 2013 request about Division 3 conditions, the three grievance requests he filed before grieving about Division 3 conditions in November 2013, and

the absence of any reference to a prior grievance request in the November request make it more likely than not that Lloyd did not file a March 2013 grievance request.

On the other hand, Lloyd presented an "Inmate Grievance Response/Appeal Form" completed by the Defendant in response to his November grievance request. (Dkt. No, 23 at 4.) The handwritten response by Jail staff is faded and illegible, but the date signed appears to be November 8, 2013. *Id.* In the "Inmate's Request for an Appeal" section, Lloyd wrote:

> I appeal based on the conditions of confinement [sic] in Div 3 didn't allow for access to grievances. I wrote requests and a grievance on Div 11-DH for proper redress approximately 3/25/13. I also wrote medical requests because I got sick in Div 3, that should be on file so the denial of my grievance should be overturned because it is a [sic] ongoing issue to which I still have injuries.

*Id.* The date of Lloyd's appeal based on this form is November 12, 2013. *Id.* The Court notes that Lloyd's explanation of his appeal has an uncanny resemblance to the requirement that Lloyd exhaust administrative remedies as it claims that the Defendant did not make the grievance process available and that Lloyd filed a March grievance request, which diminishes the weight of this evidence. As the Defendant pointed out, Lloyd could have added this paragraph to the appeal form once he learned about the need to exhaust administrative remedies in order to recover from the Defendant. In sum, after reviewing the totality of the evidence, the Court finds that it is more likely than not that Lloyd did not submit a grievance request in March 2013 regarding the Division 3 conditions. Because Lloyd did not follow the Defendant's grievance process by providing grievance or non-grievance request within 15 days of his transfer from Division 3, the Court holds that he did not exhaust his administrative remedies.

## CONCLUSION

For the reasons stated therein, the Court finds that the Defendant has carried its burden of proving that Lloyd did not exhaust the administrative remedies available to him and therefore the case is dismissed.

	_____
	Virginia M. Kendall
	United States District Court Judge
	Northern District of Illinois

Date: 1/20/2016